UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

WALTER INGRAM,

     Applicant,

v.                                  CASE NO. 8:16-cv-2406-T-23AAS

SECRETARY, Department of Corrections,

     Respondent.

_____/

## ORDER

Ingram applies under 28 U.S.C. § 2254 for the writ of habeas corpus (Doc. 1) and challenges his conviction for first-degree premeditated murder, for which Ingram is imprisoned for life. Numerous exhibits ("Respondent's Exhibit ___") support the response. (Doc. 9) The respondent both admits the application's timeliness (Doc. 9 at 14–15) and argues that some grounds are not fully exhausted and, as a consequence, are procedurally defaulted. (Doc. 9 at 15–20)

## I. BACKGROUND[1]

Ingram lived with Hope Frazier whom he considered his "god-sister." Frazier was dating a neighbor named Glenn Dilworth. The couple argued often and Ingram tried to mediate. On October 1, 2009, Ingram saw Frazier and Dilworth arguing and tried to separate them. Dilworth left but later returned and asked Ingram to come

_____

[1] This summary of the facts derives from Ingram's brief on direct appeal. (Respondent's Exhibit D at 4–9)

outside to talk.  When Ingram went outside, Dilworth pointed a gun at him and, using a racial epithet, called to him.  Ingram — upset  — went back inside and told others what happened.  Ingram said that he was tired of Dilworth and intended to kill him, but no one took Ingram seriously.

Dilworth again called to Ingram to come outside.  Ingram tried to ignore Dilworth, but eventually Ingram went outside with a knife and the cardboard tube from an empty roll of paper towels.  Ingram first hit Dilworth with the cardboard tube.  When Ingram thought Dilworth grabbed for his gun, Ingram stabbed him with the knife, which killed him.  Ingram retreated to his home and left.

Ingram was arrested and charged with first-degree murder.  At his trial Ingram testified that he stabbed Dilworth in self-defense.  The jury found Ingram guilty as charged, and the judge sentenced Ingram to the mandatory term of life imprisonment.

## II. COGNIZABILITY, EXHAUSTION, AND PROCEDURAL DEFAULT

The respondent argues that Ground One, Ground Two in part[2], and Ground Six are procedurally barred from federal review because either Ingram failed to fully exhaust his available state court remedies or the state court dismissed the federal claims as facially insufficient.  An applicant must present each claim to a state court before raising the claim in federal court.  "[E]xhaustion of state remedies requires that petitioners 'fairly presen[t]' federal claims to the state courts in order to give the

---

[2] The respondent mislabels this ground as Ground Three. (Doc. 9 at 15)

State the 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971)). *Accord Rose v. Lundy*, 455 U.S. 509, 518–19 (1982) ("A rigorously enforced total exhaustion rule will encourage state prisoners to seek full relief first from the state courts, thus giving those courts the first opportunity to review all claims of constitutional error."). "To provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court (including a state supreme court with powers of discretionary review), thereby alerting that court to the federal nature of the claim." *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (citing *Duncan*, 513 U.S. at 365–66).

**<u>Ground One:</u>**

Ingram asserts that the trial court erred by denying his motion for mistrial based on the prosecutor's violation of a pretrial order. (Doc. 1 at 4) Ingram presented this claim on direct appeal as an abuse of discretion under state law and not as the violation of a federally protected right. (Respondent's Exhibit D at 642–45) The failure to alert the state appellate court that the trial court allegedly violated a federally protected right fails to satisfy the exhaustion requirement. As *Reese* explains, 541 U.S. at 32, an applicant must alert the state court that he raises a federal law claim and not just a state law claim:

> A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim "federal."

As a consequence, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982). *Kelley v. Sec'y, Dep't Corrs.*, 377 F.3d 1317, 1345 (11th Cir. 2004) ("The exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.") (citations omitted); *Upshaw v. Singletary*, 70 F.3d 576, 578 (11th Cir. 1995) ("[T]he applicant must have fairly apprised the highest court of his state with the appropriate jurisdiction of the federal rights which allegedly were violated."). An applicant must present to the state court the same claim presented to the federal court. *Picard v. Connor*, 404 U.S. at 275 ("[W]e have required a state prisoner to present the state courts with the same claim he urges upon the federal courts."). "Mere similarity of claims is insufficient to exhaust." *Duncan*, 513 U.S. at 366.

Moreover, even if he had "fairly presented" his claim to the state courts, the claim fails to assert the violation of a federally protected right. Ingram asserts that the trial court erred by denying the mistrial motion and does not contend that the ruling violated due process or any other federal law. (Doc. 1 at 4) The ruling on the mistrial motion was based on Florida's mistrial standard and a federal habeas court does not review a state law ruling by a state court. *Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions."); *Pulley v. Harris*, 465 U.S. 37, 41 (1984) ("Under 28 U.S.C. § 2241, a writ of habeas corpus disturbing a state-court

judgment may issue only if it is found that a prisoner is in custody 'in violation of the Constitution or laws or treaties of the United States.'"). *See also Dessaure v. State*, 891 So. 2d 455, 464–65 (Fla. 2004) ("An order granting mistrial is required only when the error upon which it rests is so prejudicial as to vitiate the entire trial, making a mistrial necessary to ensure that the defendant receives a fair trial."). The state courts rejected the state law claim, and the rejection receives deference in a federal court. (Respondent's Exhibit B at 197–200, Exhibit C at 259–60, 436, and Exhibit D at 670). *Agan v. Vaughn*, 119 F.3d 1538 (11th Cir. 1997) ("[S]tate courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.").

**Ground Two in Part and Ground Six:**

The respondent argues that Ground Two in part and Ground Six are procedurally defaulted because the state court dismissed the claims as facially insufficient. (Doc. 9 at 18) A state court's dismissal of a claim for facial insufficiency is an adjudication on the merits owed deference under Section 2254(d) and not, as the respondent contends, a dismissal on state procedural grounds. *Boyd v. Comm., Ala. Dep't Corrs.*, 697 F.3d 1320, 1331 (11th Cir. 2012); *Borden v. Allen*, 646 F.3d 785, 812–15 (11th Cir. 2011).

\* \* \* \*

The failure to properly exhaust each available state court remedy causes a procedural default of the unexhausted claim. *O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999) ("Boerckel's failure to present three of his federal habeas claims to the Illinois

Supreme Court in a timely fashion has resulted in a procedural default of those claims."); *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) ("[W]hen it is obvious that the unexhausted claims would be procedurally barred in state court due to a state-law procedural default, we can forego the needless 'judicial ping-pong' and just treat those claims now barred by state law as no basis for federal habeas relief.").

As determined above, Ingram procedurally defaulted Ground One by not "federalizing" the ground in state court; as a consequence, the ground is barred from federal review absent a showing of "actual cause and prejudice" or "manifest injustice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray v. Carrier*, 477 U.S. 478, 496 (1986). The basis for "cause" must ordinarily reside in something external to the defense. *Marek v. Singletary*, 62 F.3d 1295, 1302 (11th Cir. 1995). To show "prejudice," the applicant must show "not merely that the errors at his trial created the *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Hollis v. Davis*, 941 F.2d 1471, 1480 (11th Cir. 1991) (italics original) (quoting *United States v. Frady*, 456 U.S. 152, 170 (1982)).

To meet the fundamental miscarriage of justice exception, Ingram must show constitutional error coupled with "new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). This exception is not available unless "petitioner shows, as a factual matter, that he did

not commit the crime of conviction." *Ward v. Cain*, 53 F.3d 106, 108 (5th Cir. 1995) (denying a certificate of probable cause).

Ingram establishes neither "cause and prejudice" nor a "fundamental miscarriage of justice." Therefore, Ground One is procedurally barred from federal review and not entitled to a determination on the merits. Grounds Two and Six are entitled to a review on the merits.

### III.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000). Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), explains this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a
> federal habeas court to grant a state prisoner's application for a
> writ of habeas corpus with respect to claims adjudicated on the
> merits in state court. Under § 2254(d)(1), the writ may issue
> only if one of the following two conditions is satisfied — the
> state court adjudication resulted in a decision that (1) "was
> contrary to . . . clearly established Federal Law, as determined
> by the Supreme Court of the United States" or (2) "involved an
> unreasonable application of . . . clearly established Federal law,
> as determined by the Supreme Court of the United States."
> Under the "contrary to" clause, a federal habeas court may
> grant the writ if the state court arrives at a conclusion opposite
> to that reached by this Court on a question of law or if the state
> court decides a case differently than this Court has on a set of
> materially indistinguishable facts. Under the "unreasonable
> application" clause, a federal habeas court may grant the writ if
> the state court identifies the correct governing legal principle
> from this Court's decisions but unreasonably applies that
> principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 693 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). *White v. Woodall*, 572 U.S. 415, 427 (2014) ("The critical point is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question . . . .") (citing *Richter*, 562 U.S. at 102–03); *Woods v. Donald*, 575 U.S. 312, 316 (2015) ("And an 'unreasonable application of' those holdings must be objectively unreasonable, not

merely wrong; even clear error will not suffice.") (citing *Woodall*, 572 U.S. at 419). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide.").  The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case.  "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. at 694. A federal court must afford due deference to a state court's decision.  "AEDPA prevents defendants — and federal courts — from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010); *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

When the last state court to decide a federal claim explains the decision in a reasoned opinion, a federal habeas court reviews the specific reasons stated in the opinion and defers if the explanation is reasonable.  *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) ("[A] federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable.").  When the

relevant state-court decision is not accompanied with reasons for the decision, the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Wilson*, 138 S. Ct. at 1192. The State may contest "the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision . . . ." *Wilson*, 138 S. Ct. at 1192.

In a *per curiam* decision without a written opinion the state appellate court on direct appeal affirmed Ingram's conviction and sentence. (Respondent's Exhibit D at 670) Similarly, in other *per curiam* decisions without a written opinion the state appellate court both affirmed the denial of Ingram's Rule 3.850 motion for post-conviction relief and denied his petition under Rule 9.141(d), Florida Rules of Appellate Procedure, alleging ineffective assistance of appellate counsel. (Respondent's Exhibit F at 786 and Exhibit G at 227) A state appellate court's *per curiam* decision warrants deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254, *reh'g and reh'g en banc denied*, 278 F.3d 1245 (11th Cir. 2002), *cert. denied sub nom Wright v. Crosby*, 538 U.S. 906 (2003); *Richter*, 562 U.S. at 100 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."); *Bishop v. Warden, GDCP*, 726 F.3d 1243,

1255–56 (11th Cir. 2013) (describing the difference between an "opinion" or
"analysis" and a "decision" or "ruling" and explaining that deference is accorded
the state court's "decision" or "ruling" even absent an "opinion" or "analysis").

As *Pinholster* explains, 563 U.S. at 181–82, review of the state court decision is
limited to the state court record:

> We now hold that review under § 2254(d)(1) is limited to the
> record that was before the state court that adjudicated the claim
> on the merits. Section 2254(d)(1) refers, in the past tense, to a
> state-court adjudication that "resulted in" a decision that was
> contrary to, or "involved" an unreasonable application of,
> established law. This backward-looking language requires an
> examination of the state-court decision at the time it was made.
> It follows that the record under review is limited to the record
> in existence at that same time, i.e., the record before the state
> court.

Ingram bears the burden of overcoming by clear and convincing evidence a
state court's fact determination.  "[A] determination of a factual issue made by a
State court shall be presumed to be correct.  The applicant shall have the burden of
rebutting the presumption of correctness by clear and convincing evidence."
28 U.S.C. § 2254(e)(1).  This presumption of correctness applies to a finding of fact
but not to a mixed determination of law and fact.  *Parker v. Head*, 244 F.3d 831, 836
(11th Cir.), *cert. denied*, 534 U.S. 1046 (2001).  The state court's rejection of Ingram's
post-conviction claims warrants deference in this federal action.  (Respondent's
Exhibits E-c and G at 227)  Ingram's federal application presents the same grounds
of ineffective assistance of counsel that he presented to the state courts.

## IV.  INEFFECTIVE ASSISTANCE OF COUNSEL

Ingram claims ineffective assistance of counsel, a difficult claim to sustain.

"[T]he cases in which habeas petitioners can properly prevail on the ground of

ineffective assistance of counsel are few and far between."  *Waters v. Thomas*,

46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (quoting *Rogers v. Zant*, 13 F.3d 384,

386 (11th Cir. 1994)).  *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998),

explains that *Strickland v. Washington*, 466 U.S. 668, 687 (1984), governs an

ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is
> well settled and well documented. In *Strickland v. Washington*,
> 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the
> Supreme Court set forth a two-part test for analyzing ineffective
> assistance of counsel claims. According to *Strickland*,
>
>> First, the defendant must show that counsel's
>> performance was deficient. This requires showing
>> that counsel made errors so serious that counsel
>> was not functioning as the "counsel" guaranteed
>> the defendant by the Sixth Amendment. Second,
>> the defendant must show that the deficient
>> performance prejudiced the defense. This
>> requires showing that counsel's errors were so
>> serious as to deprive the defendant of a fair trial,
>> a trial whose result is reliable.

*Strickland* requires proof of both deficient performance and consequent

prejudice.  *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an

ineffective assistance claim . . . to address both components of the inquiry if the

defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When

applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its

two grounds.").  "[C]ounsel is strongly presumed to have rendered adequate

assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Ingram must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691. To meet this burden, Ingram must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91. As *White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992), explains, Ingram cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would

> have done. We ask only whether some reasonable lawyer at the
> trial could have acted, in the circumstances, as defense counsel
> acted at trial . . . . We are not interested in grading lawyers'
> performances; we are interested in whether the adversarial
> process at trial, in fact, worked adequately.

*Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious:  the trial lawyers, in every case, could have done something more or something different.  So, omissions are inevitable . . . .  [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (quoting *Burger v. Kemp*, 483 U.S. 776, 794 (1987)).

Additionally, *Hittson v. GDCP Warden*, 759 F.3d 1210, 1267 (11th Cir. 2014), *cert. denied sub nom., Hittson v. Chatman*, 135 S. Ct. 2126 (2015), discusses the required extent of counsel's investigation:

> [W]e have explained that "no absolute duty exists to investi-
> gate particular facts or a certain line of defense." *Chandler*,
> 218 F.3d at 1317. "[C]ounsel has a duty to make reasonable
> investigations or make a reasonable decision that makes
> particular investigations unnecessary." *Strickland*, 466 U.S.
> at 691, 104 S. Ct. at 2066 (emphasis added). "[C]ounsel need
> not always investigate before pursuing or not pursuing a line
> of defense. Investigation (even a nonexhaustive, preliminary
> investigation) is not required for counsel reasonably to
> decline to investigate a line of defense thoroughly." *Chandler*,
> 218 F.3d at 1318. "In assessing the reasonableness of an
> attorney's investigation . . . a court must consider not only
> the quantum of evidence already known to counsel, but also
> whether the known evidence would lead a reasonable attorney
> to investigate further." *Wiggins*, 539 U.S. at 527, 123 S. Ct.
> at 2538.

*See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (confirming that counsel has no duty to raise a frivolous claim).

Under Section 2254(d) Ingram must prove that the state court's decision "(1) [was] contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) [was] based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  Sustaining a claim of ineffective assistance of counsel is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105; *Pinholster*, 563 U.S. at 202 (stating that an applicant must overcome this "'doubly deferential' standard of *Strickland* and the AEDPA"); *Nance v. Warden, Ga. Diag. Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) ("Given the double deference due, it is a 'rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.'") (quoting *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011)), *cert. denied*, 140 S. Ct. 2520 (2020); and *Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim — which is governed by the deferential *Strickland* test — through the lens of AEDPA deference, the resulting standard of review is "doubly deferential."), *cert. denied*, 571 U.S. 874 (2013).

In summarily denying Ingram's motion for post-conviction relief, the state court recognized that *Strickland* governs a claim of ineffective assistance of counsel. (Respondent's Exhibit E at 702–12)  Because the state court rejected the grounds based on *Strickland*, Ingram cannot meet the "contrary to" test in Section 2254(d)(1).

Ingram instead must show that the state court unreasonably applied *Strickland* or unreasonably determined the facts. In determining "reasonableness," a federal application for the writ of habeas corpus authorizes determining only "whether the state habeas court was objectively reasonable in its *Strickland* inquiry" and not independently assessing whether counsel's actions were reasonable. *Putnam v. Head*, 268 F.3d 1223, 1244, n.17 (11th Cir. 2001), *cert. denied*, 537 U.S. 870 (2002). The presumption of correctness and the highly deferential standard of review requires that the analysis of each ground begin with the state court's analysis.

## A. Grounds of IAC During Trial

### Ground Two:

Ingram contends that trial counsel was ineffective for failing to impeach the State's witness Simone Perry both with prior inconsistent statements in her deposition ("sub-claim A") and for bias ("sub-claim B"). (Doc. 1 at 5–6)

### Sub-claim A

The post-conviction court denied sub-claim A as follows (Respondent's Exhibit E-c at 703) (state court record citations omitted):

> Defendant alleges counsel failed to impeach or properly cross-examine witness Simone Perry based on prior inconsistent statements. He argues that at trial, Ms. Perry testified that she heard him say he was going to stab Glenn, but during her deposition, she only stated that she heard him "mutter something in the nature of a threat towards Glenn" and "could not recall the exact words he used." Defendant acknowledges that two other witnesses — Henry Harris (the victim's friend) and Glenn Dilworth[, Jr.] (the victim's son) — also testified that he had made a prior threat toward the victim. However, he contends they were "undeniably" and "soundly" impeached and concludes their testimony could not

be deemed credible. His position is that without Ms. Perry's testimony, "no other reliable testimony existed to establish premeditation whatsoever."

This claim lacks merit. Impeachment merely means that a witness has been confronted with an inconsistency or a bias, which the jury may consider in evaluating his or her credibility. The jury still hears the testimony and may find the witness to be credible [despite] the impeachment. Regardless, Ms. Perry previously asserted that Defendant had threatened the victim while holding a butcher knife, which was not inconsistent with her testimony at trial. There is no reasonable probability that the outcome of the trial would have been different if counsel had impeached her on her ability at trial to recall the exact words Defendant used in that threat.

Because Perry testified (1) in deposition that she "saw [Ingram] holding a kitchen knife" and "heard [him] mutter something in the nature of a threat towards Glenn" (Respondent's Exhibit E-a at 676) and (2) at trial that she saw Ingram grab a kitchen knife and heard him say, "I'm going to stab Glenn" (Respondent's Exhibit E-c at 719–20), the state court did not unreasonably determine facts.  Whether the deposition testimony was a prior inconsistent statement and whether the prior inconsistent statement was admissible for the truth of the matter asserted are issues of state law, and a state court's determination of state law receives deference in federal courts.  Fla. Stat. § 90.608(1); *Pearce v. State*, 880 So. 2d 561, 569 (Fla. 2004); *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985) ("The federal courts must defer to a state court's interpretation of its own rules of evidence and procedure.").[3]

---

[3] Cases cited by Ingram in his reply (Doc. 12 at 11) reversed because trial counsel either failed to impeach with a prior statement that was inconsistent or failed to examine the only eyewitness. *United States v. Orr*, 636 F.3d 944, 952–53 (8th Cir. 2011); *Higgins v. Renico*, 470 F.3d 624, 628, 630 (6th Cir. 2000); *Silva v. Woodford*, 279 F.3d 825, 852–53 (9th Cir. 2002) (concluding that trial counsel's failure to cross-examine an eyewitness about a medical condition that rendered him highly receptive to suggestion was a reasonable strategic decision).

Because trial counsel was not ineffective for failing to impeach Perry with the prior consistent statement, the state court did not unreasonably apply *Strickland*. *Pinkney v. Sec'y, Dep't Corrs.*, 876 F.3d 1290, 1297 (11th Cir. 2017).

**Sub-claim B**

Ingram contends that trial counsel was ineffective for failing to impeach Simone Perry for bias. (Doc. 1 at 5–6) The post-conviction court denied sub-claim B as follows (Respondent's Exhibit E-c at 703–04) (state court record citations omitted):

> Defendant also alleges in Ground One that counsel failed to properly cross-examine Ms. Perry "regarding her animosity against [him] that would have established her motive for giving false or misleading testimony against [him]." This portion of Ground One was stricken with leave to amend.
>
> In the Supplemental Amendment, he adds that during depositions, Ms. Perry admitted she had some animosity toward him. He cites Exhibit A but no exhibits are attached to either the Supplemental Amendment or the original Motion for Post-conviction Relief.
>
> This claim remains legally insufficient with regard to the nature of Ms. Perry's animosity and to establish that she had a motive for giving false testimony against him. Thus, Defendant fails to establish that the outcome of the trial would have been different if counsel had cross-examined her on this issue.

Ingram identified deposition testimony in neither his initial post-conviction motion (Respondent's Exhibit-a at 677) nor his supplemental motion (Respondent's Exhibit E-b at 697–98) nor his motion for rehearing (Respondent's Exhibit E-d at 728–32) that demonstrated Perry's bias. Ingram attached to his rehearing motion a letter from trial counsel, labeled "Exhibit A," informing him that "Simone Perry **(who admitted that she had some animosity towards you)** testified that she came

out of the den room while watching a movie . . . ."  (Respondent's Exhibit E-d

at 731) (bold in the original)  The state court did not unreasonably apply *Strickland*'s

prejudice component because Ingram failed to identify deposition testimony that trial

counsel could have used to impeach Perry for bias.  *Borden*, 646 F.3d at 822; *United*

*States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991) ("[E]vidence about the testimony

of a putative witness must generally be presented in the form of actual testimony

by the witness or on affidavit."); *Buckelew v. United States*, 575 F.2d 515, 521

(5th Cir. 1978) ("[C]omplaints of uncalled witnesses are not favored, because the

presentation of testimonial evidence is a matter of trial strategy and because

allegations of what a witness would have testified are largely speculative.").

## **Ground Three:**

Ingram asserts that trial counsel was ineffective for failing both to explain to

him Florida's "Stand Your Ground" law and to raise a defense based on that law.

(Doc. 1 at 6–7)  The post-conviction court denied the claim as follows (Respondent's

Exhibit E-c at 705–06) (italics in original):

> Defendant alleges counsel failed to inform him of the
> affirmative defense under the Stand-Your-Ground law. He
> argues that if counsel had raised this defense, the jury would
> have acquitted him, and in support, states the following:  there
> was no *reliable* testimony[1] that he made prior threats against the
> decedent; the victim had only a single stab wound, which was
> "consistent with trying to get someone away in self-defense[;]
> minutes before the stabbing, the decedent threatened him
> and used a racial slur; investigators recovered a pistol at the
> decedent's residence; witnesses testified the victim had been
> drinking; no witnesses observed the stabbing; witnesses testified
> the victim was the aggressor; and conditions in the area "were
> nearly pitch black (dark)." Defendant also argues he had a right
> to arm himself with a knife and stand his ground with no duty
> to retreat, which counsel should have argued.

> [1] He argues the only testimony the State proffered
> was or could have been impeached.
>
> This claim lacks merit for the reasons set forth in the ruling
> on Ground Two. There was extensive testimony about the
> altercations that took place during the evening between
> Defendant and the decedent, as well as the fact that the
> decedent had been drinking. There is no reasonable probability
> that the jury would have returned with an acquittal if counsel
> had presented additional arguments in support of the
> Stand-Your-Ground law.

The post-conviction court denied the claim that counsel was ineffective for not

asserting a "Stand Your Ground" defense in relevant part as follows (Respondent's

Exhibit E-c at 704–05):

> Defendant alleges counsel failed to seek a pre-trial probable
> cause hearing based on the Stand-Your-Ground law, which
> would have required dismissal of the charge. He argues that
> upon his arrest, he informed the authorities his actions were
> the result of self-defense . . . . This claim lacks merit . . . .
> [T]he testimony in this case indicates that Defendant armed
> himself with a knife and left his house to fight the decedent in
> the street at the end of the driveway. Thus, the record shows
> that Defendant effectively "re-engaged" the victim in a new
> altercation. In this situation, there is no reasonable probability
> the Court would have granted Defendant self-defense immunity
> from prosecution at a pre-trial hearing. *Joseph v. State*,
> 103 So. 3d 227, 230 (Fla. 4th DCA 2012); *Rodriguez v. State*,
> 127 So. 3d 705 (Fla. 4th DCA 2013) ("[W]hen the petitioner
> reengaged the victim outside the business premises where
> the initial confrontation took place, he lost his statutory
> immunity[.]"). Therefore, Defendant cannot establish that he
> was prejudiced by counsel's failure to request such a hearing.

Testimony at trial — including Ingram's own testimony — proved that

Ingram came home upset, said that Dilworth had just pointed a gun at him, and

went back outside and stabbed Dilworth. (Respondent's Exhibit C at 528–39 and

Exhibit E-c at 716–18)  While there is no duty to retreat under Florida's "Stand Your

Ground" law, deadly force is lawful only to prevent "imminent death or great

bodily harm." Fla. Stat. § 776.012(1) (2009). Because Ingram returned home

after Dilworth pointed a gun at him, any threat of death or great bodily harm

had subsided. The state court did not unreasonably apply *Strickland*'s prejudice

component. *Pressley v. State*, 395 So. 2d 1175, 1177 (Fla. 3d DCA 1981) ("[A] person

may not use violence upon his assailant, after the assailant is no longer a threat and

all danger is clearly past, and thereby claim to be acting in self-defense."); *Reaves*

*v. Sec'y, Fla. Dep't Corrs.*, 717 F.3d 886, 904–05 (11th Cir. 2013) (concluding that,

because evidence at trial defeated the defense, the applicant failed to show prejudice

under *Strickland* for the claim that trial counsel was ineffective for not presenting an

intoxication defense).

 Also, in closing argument trial counsel asserted self-defense based on Florida's

"Stand Your Ground" law (Respondent's Exhibit C at 571–594), the trial court

instructed the jury on that defense (Respondent's Exhibit C at 604–08), and the jury

rejected that defense. (Respondent's Exhibit A at 156–57) Consequently, Ingram

could not have shown that the outcome at trial would have changed if trial counsel

had acted differently. *Ledford v. Warden*, 818 F.3d 600, 645 (11th Cir. 2016) ("In

other words, because the jury was presented with and instructed on the very defense

that Ledford contends trial counsel neglected, there is little chance, let alone a

'substantial' chance, that the trial outcome would have been any different had trial

counsel more fervently supported a *mens rea* defense.").

**Ground Four:**

Ingram asserts that trial counsel was ineffective for not lodging three objections during trial testimony by the State's witnesses Henry Harris and Glenn Dilworth, Jr.  (Doc. 1 at 7–8)  The post-conviction court denied the sub-claims as follows.

**Harris Sub-claim (1)**

> The prosecutor asked Henry Harris, "[D]id he have a way to get rid of a gun if he had a gun?[ ]" and Harris answered, "[N]o, sir."  The Court finds no prejudice, because this question and answer tends to establish that Defendant did not have a gun.

(Respondent's Exhibit E-c at 706) (state court record citations omitted)

Because the state court mistakenly understood the pronoun "he" to refer to Ingram — instead of Dilworth, the victim — the state court incorrectly concluded that the testimony tended to show that Ingram did not have a gun.  (Respondent's Exhibit E-c at 718)  Nevertheless, the trial court would have overruled an objection because Harris testified both (1) that he observed Dilworth walk down the street and back and (2) that, based on that observation, in Harris's opinion Dilworth did not have a way to get rid of a gun, even if Dilworth had one.  Fla. Stat. §§ 90.601 and 90.701.  (Respondent's Exhibit E-c at 717–18)  Either unobjectionable first-hand evidence based on direct observation by Harris or, if understood differently, admissible lay-opinion testimony, this was proper testimony.  Trial counsel fittingly did not object.  *Meders v. Warden, Ga. Diag. Prison*, 911 F.3d 1335, 1354 (11th Cir. 2019); *State v. Santiago*, 928 So. 2d 480, 481–82 (Fla. 5th DCA 2006).

### Harris Sub-claim (2)

> The prosecutor asked Mr. Harris, "[D]id you tell anybody in
> the house [that] Walter was saying this?" (referring to
> Defendant making threats), and Mr. Harris answered, "I mean
> everybody was standing in there heard him for themselves."
> Defendant argues this constituted "self-bolstering, self-serving
> hearsay and testifying for non-testifying witnesses."  The Court
> finds no prejudice, because the point of the witness'[s] answer
> was merely that Defendant was speaking loudly; i.e., "[H]e
> didn't come in the house whispering."

(Respondent's Exhibit E-c at 706–07) (state court record citations omitted)

Whether the trial court would have overruled an objection is an issue of

state law, and a state court's determination of state law receives deference in a

federal court.  *Machin*, 758 F.2d at 1433.  The trial court would have overruled

an objection because Harris both (1) testified that he observed other people standing

near Ingram when Ingram spoke and (2) opined based on his observation that

the bystanders heard Ingram's statements.  Fla. Stat. §§ 90.601 and 90.701.

(Respondent's Exhibit E-c at 718–19)  Because this also was proper lay opinion

testimony, the state court did not unreasonably apply *Strickland*'s prejudice

component.  *Meders*, 911 F.3d at 1354.

### Harris Sub-claim (3)

> Regarding the date, the prosecutor asked, "[T]his was on the
> first of the month?"  Defendant argues this was a prejudicial
> comment designed to infer that he used his Social Security
> check to buy drugs. The prosecutor did go on to ask,
> "[A]nd what happens for Pops on the first of the month?"
> [B]ut counsel objected and the prosecutor stated he would
> go no further.  Defendant argues this violated the order
> granting a defense Motion *in Limine* to preclude "speculative
> testimony that [he] went to a drug house after stabbing
> decedent."  However, the Court finds no prejudice, because

there was no reference to buying drugs in this portion of the examination.

(Respondent's Exhibit E-c at 707) (state court record citations omitted)

The trial court prohibited all testimony that Ingram visited a drug house after the stabbing. (Respondent's Exhibit B at 197–200) Because Harris did not testify at trial that Ingram bought drugs after the stabbing, the state court did not unreasonably determine that the record refuted the claim. (Respondent's Exhibit E-c at 719)

### Dilworth, Jr. Sub-claim (1)

The prosecutor elicited speculative testimony from the victim's son, Glenn Dilworth[, Jr.] (aged nine), that Defendant wanted a ride to a drug house. The prosecutor asked, "[A]nd why did your dad say he wouldn't take Pops there?" and Glenn[, Jr.] responded, "I think because of drugs or something." Defendant acknowledges that counsel moved for a mistrial but argues counsel only argued the comments affected Defendant's credibility and were irrelevant. He contends counsel should have argued that this question, too, violated the order on the Motion *in Limine*. This Court finds no prejudice, because the prosecutor followed up with the question, "[D]id your dad say that?" and Glenn[, Jr.] admitted, "[N]o." When counsel moved for a mistrial, the prosecutor agreed to ask no more. There is no reasonable probability that the Court would have granted a mistrial or that the outcome of the appeal would have been different if counsel had added an objection regarding the violation of the Motion *in Limine*.

(Respondent's Exhibit E-c at 707–08) (state court record citations omitted)

Dilworth, Jr. denied at trial that his father ever said that he would not give Ingram a ride because of drugs. (Respondent's Exhibit E-c at 720) The granting of a mistrial motion is an issue of state law, and a state court's determination of state law receives deference in federal courts. *Pinkney*, 876 F.3d at 1295; *Dessaure*, 891 So. 2d

at 464–65.  Because an expanded mistrial motion would not have succeeded, the

state court did not unreasonably apply *Strickland*.  *Pinkney*, 876 F.3d at 1297.

### Dilworth, Jr. Sub-claim (2)

> The prosecutor asked Glenn[, Jr.] whether his dad had a
> weapon or knife, and Glenn[, Jr.] responded, "[N]o, he didn't
> have anything in his hands or pockets."  Defendant argues
> counsel failed to object "to what amounted to pure speculation,
> since there was no way Glenn[, Jr.] could have known if his
> father had a gun or knife concealed on his person."  This claim
> lacks merit.  Glenn[, Jr.] had previously admitted his father
> "went inside to get something" before going over to Pops'[s]
> house.  Counsel had no basis to object to his answer regarding
> what the decedent did or did not have in his hands or pockets;
> at most, counsel could have challenged the answer during
> cross-examination.

(Respondent's Exhibit E-c at 708) (state court record citations omitted)

Dilworth, Jr. testified at trial that Dilworth came inside to get something

before going over to Ingram's home.  (Respondent's Exhibit E-c at 720–21)  The

efficacy of an objection to the testimony by Dilworth, Jr. based on speculation is an

issue of state law, and a state court's determination of state law receives deference in

a federal court.  Fla. Stat. § 90.604.  *Machin*, 758 F.2d at 1433.  Because the objection

would not have succeeded, the state court did not unreasonably apply *Strickland*.

*Meders*, 911 F.3d at 1354.

### Dilworth, Jr. Sub-claim (3)

> Counsel impeached Glenn on a prior inconsistent statement,
> i.e., that he never heard the argument between his father
> and Defendant because he was inside watching TV, and the
> prosecutor then led the witness by asking, "[Were] there
> two arguments?" and "was some inside and some outside?"
> Defendant argues the prosecutor led the witness to "hang onto
> the only testimony that established Defendant made a prior

> threat."  Counsel had no basis to object, because the prosecutor
> had a right to clarify the witness'[s] answer.

(Respondent's Exhibit E-c at 708) (state court record citations omitted)

The prosecutor clarified on re-direct examination what Dilworth's son

heard during the argument.  (Respondent's Exhibit E-c at 722)  Whether the

prosecutor had a right to clarify that testimony is an issue of state law, and a state

court's determination of state law receives deference in a federal court.  Fla. Stat.

§ 90.612(1); *Machin*, 758 F.2d at 1433.  Because the objection would not have

succeeded, the state court did not unreasonably apply *Strickland*.  *Meders*, 911 F.3d

at 1354.[4]

**Ground Six:**

Ingram asserts that trial counsel was ineffective for not calling Alexis Poole as

a witness at trial.  (Doc. 1 at 10–11)  The post-conviction court denied the claim as

follows (Respondent's Exhibit E-c at 711):

> Defendant alleges counsel failed to call Alexis Poole to testify
> that she was on the computer at her house at the time of the
> stabbing and none of the children told her that Defendant had
> made any threats to the decedent.  He argues this testimony
> would have rebutted that of the State's witnesses, who claimed
> to have heard him threatening the decedent.
>
> Ground Six was stricken with leave to amend.  In the
> Supplemental Amendment, he adds that "counsel also had
> the testimony of Alexis Poole, who said she was present at the
> house at the time of the stabbing[,] and[, on] the evening of the
> stabbing, none of the children mentioned that [Defendant] had

---

[4] In his reply (Doc. 12 at 15–16) Ingram erroneously relies on several non-controlling cases. *United States v. Williams*, 358 F.3d 956, 961–64 (D.C. Cir. 2004) (reversing for admission of inculpatory hearsay statements); *Cauthern v. Colson*, 736 F.3d 465, 476–77 (6th Cir. 2013) (reversing for improper comments by the prosecutor in closing argument); *Girts v. Yanai*, 501 F.3d 743, 755–56 (6th Cir. 2007) (same); *Washington v. Hofbauer*, 228 F.3d 689, 699–701 (6th Cir. 2000) (same).

made threats to [the victim]."  He cites Exhibit A but no exhibits are attached to either the Supplemental Amendment or the original Motion for Post-conviction Relief.  He concludes this would have established a motive for Ms. Perry's false testimony.

This claim remains legally insufficient with regard to the nature of Ms. Poole's testimony.  Thus, Defendant fails to establish that the outcome of the trial would have been different if counsel had called her as a witness.

Ingram identified deposition testimony by Poole in neither his post-conviction motion (Respondent's Exhibit-a at 677) nor his supplemental motion (Respondent's Exhibit E-b at 697–98) nor his motion for rehearing.  (Respondent's Exhibit E-d at 728–32)  Ingram attached to his rehearing motion a letter from trial counsel, labeled "Exhibit B," informing him that: "I deposed Ms. Alexis Poole . . . .  She testified that none of the children told her (the evening you stabbed Glenn) that you had made any threats to Glenn . . . ."  (Respondent's Exhibit E-d at 732)  Because he did not identify deposition testimony by Poole that trial counsel could have presented at trial, Ingram failed to plead facts that would show prejudice.  Consequently, the state court did not unreasonably apply *Strickland*.  *Borden*, 646 F.3d at 822; *Ashimi*, 932 F.2d at 650.

## B. Ground of IAC During Closing

### Ground Five:

Ingram asserts that trial counsel was ineffective for not objecting to five comments by the prosecutor during closing argument.  (Doc. 1 at 9–10)  The post-conviction court denied the claim as to each comment as follows.

**Comment One**

> The prosecutor argued: "You don't bring a knife to a gun fight. You bring a knife to something else. You bring a knife to an ambush." Also: "[Y]ou conceal the knife." And: "[Y]ou don't bring a knife to a gun fight because he knew it wasn't going to be a gun fight." Defendant contends there was no testimony that he concealed the knife or that there was an "ambush" and further contends these comments constituted inferences on premeditation and his state of mind, without foundation or basis. However, the arguments were permissible and constituted fair comments in support of the State's theory that Defendant did not act in self-defense but rather that he killed the victim "after consciously deciding to do so."

(Respondent's Exhibit E-c at 709) (state court record citations omitted)

Whether the prosecutor's comments were permissible is an issue of state law, and a state court's determination of state law receives deference in a federal court. *Ford v. Norris*, 364 F.3d 916, 918–19 (8th Cir. 2004) ("In Mr. Ford's case, the Arkansas Supreme Court came to the conclusion that had Mr. Ford's attorney objected to the prosecutor's statements, the objection, as a matter of Arkansas law, would probably have been overruled . . . . [T]he Arkansas Supreme Court was applying Arkansas law to the facts of Mr. Ford's case. The Arkansas Supreme Court is the final authority on the interpretation of Arkansas law."). Even if no witness testified that Ingram concealed a knife or ambushed Dilworth, the prosecutor drew a reasonable inference from testimony that Ingram grabbed a knife and a cardboard tube from the kitchen and returned outside to stab Dilworth. (Respondent's Exhibit E-c at 716–20) *See Dessaure v. State*, 891 So. 2d 455, 468 (Fla. 2004) ("Closing argument presents an opportunity for both the State and the defendant to argue all reasonable inferences that might be drawn from the evidence."). Because trial

counsel was not ineffective and the outcome of trial would not have changed, the

state court did not unreasonably apply *Strickland*.  *Meders*, 911 F.3d at 1354.

### Comment Two

> The prosecutor argued the decedent's gun was hidden in [an oven] mitt in his kitchen and discovered when "they're moving out of the house because of Glenn's death and the kid's going to go somewhere . . . ."  Defendant argues there was no testimony the gun was found a lengthy amount of time later or that it was while "the kid" was being moved out; his position is that this was designed to play on the sympathy of the jury.  There is simply no basis for this claim, and no reasonable probability that the comments influenced the verdict in any way.

(Respondent's Exhibit E-c at 709) (state court record citations omitted)

At trial the parties stipulated that "when Glenn Dilworth's family was moving

everything out of the house to vacate the house three days after Mr. Dilworth's

death, the family found a handgun in an oven mitt hanging over the stove in

Mr. Dilworth's kitchen . . . ."  (Respondent's Exhibit C at 444)  Because the

prosecutor's comment was a reasonable inference drawn from this stipulation,

the state court did not unreasonably apply *Strickland*.

### Comment Three

> The prosecutor argued "[I]f you go and arm yourself and come back to the conflict, that's not kosher" and "not only did he arm himself and resume the conflict, he armed himself, hid the knife in the tube to ambush."  Defendant argues this was an intentional misstatement of fact designed to mislead the jury.  His position is that he did not return to the conflict but rather the victim came to his residence, where he had a right to arm and defend himself.  However, the undisputed facts indicate the final altercation took place at the end of his driveway, by the street.  Therefore, the prosecutor was entitled to argue that Defendant left the safety of his house to resume the conflict with the decedent outdoors.

(Respondent's Exhibit E-c at 709–10) (state court record citations omitted)

A federal court defers to the state court's conclusion, based on state law, that the comment was proper. *Ford*, 364 F.3d at 918–19. Witnesses testified at trial that Ingram went inside his home after Dilworth pointed a gun at him and emerged with both a knife and a cardboard tube and stabbed Dilworth to death. (Respondent's Exhibit E-c at 716–21) Because the prosecutor's comment was a reasonable inference drawn from this testimony and an accurate statement of Florida's self-defense law, the state court did not unreasonably apply *Strickland*. *Pressley*, 395 So. 2d at 1177.

### Comment Four

> The prosecutor argued Defendant was "fed up" with the victim after breaking up arguments, "being in the middle," cooking, making coffee, feeding his kids, driving him around, and taking him gambling. Defendant argues there was no testimony from him that he was fed up and asserts that if anything, he enjoyed helping his friend. However, this constituted fair comment based on other testimony at trial.

(Respondent's Exhibit E-c at 710) (state court record citations omitted)

Whether the comments were proper is based on state law, and a state court's determination of state law receives deference in a federal court. *Ford*, 364 F.3d at 918–19. Ingram testified that he drove Dilworth's children to school on rainy mornings, brewed coffee for Dilworth, cooked dinner for Dilworth and his children, and regularly drove Dilworth and his "god-sister" to the beach and to the casino. (Respondent's Exhibit C at 518, 532–33) Witnesses testified that Ingram grew tired of mediating Dilworth's fights with his "god-sister" and became angry.

(Respondent's Exhibit E-c at 715–16, 718–19)  Because the prosecutor's comments were reasonable inferences from this testimony, the state court did not unreasonably apply *Strickland*.

### Comment Five

> The prosecutor argued Defendant wanted the decedent "to take him somewhere" because Defendant just got paid that day, but the decedent said, "I'm not going to risk my kid, I'm not going to go there."  Defendant argues this violated the pretrial Motion *in Limine* precluding speculative testimony about where he wanted to go, i.e., to a drug house or to buy drugs. However, the prosecutor did not specifically mention a drug house or the purchase of drugs.

(Respondent's Exhibit E-c at 710) (state court record citations omitted)

The trial court prohibited all testimony that Ingram went to a drug house after the stabbing.  (Respondent's Exhibit B at 197–200)  Because the prosecutor's comment (1) explained only why Dilworth would not — before the stabbing — drive Ingram where Ingram wanted to go and (2) did not mention a drug house or the purchase of drugs, the prosecutor's comment did not violate the pretrial ruling. Consequently, the state court did not unreasonably apply *Strickland*.  (Respondent's Exhibit B at 199–200)

* * * *

Further, the post-conviction court rejected the sub-claims for all comments as follows (Respondent's Exhibit E-c at 710–11):

> Defendant concludes "the prosecutor's primary witnesses to establish an alleged prior threat were thoroughly impeached" and argues the State could only establish its case of premeditation by violating pretrial rulings, speculating, or inferring on evidence and misstating the law [or] facts." Therefore, he concludes the foregoing comments cannot be

> deemed harmless.  However, the Court disagrees, and finds
> counsel had no basis to object to the comments in question.
> Furthermore, there is no reasonable probability the outcome
> of the trial or appeal would have been different if counsel had
> done so.

An objection to the comments would have failed, the prosecutor's comments did not violate the pretrial ruling, and premeditation was proven by circumstantial evidence.  *Franklin v. State*, 209 So. 3d 1241, 1246 (Fla. 2016) ("Premeditation may be inferred from circumstantial evidence such as the nature of the weapon used, the presence or absence of adequate provocation, previous difficulties between the parties, the manner in which the homicide was committed, and the nature and manner of the wounds inflicted." (citation and quotations omitted)).  Consequently, the state court did not unreasonably apply *Strickland*.

## C.  Ground of IAC Post-Trial

**Ground Seven:**

Ingram asserts that trial counsel was ineffective for not raising arguments in a motion for new trial.  (Doc. 1 at 11–13)  The post-conviction court denied the claim as follows (Respondent's Exhibit E-c at 711–12):

> Defendant alleges counsel failed to file a sufficient Motion for
> New Trial based on the weight and sufficiency of the evidence.
> He argues the Motion counsel filed "did raise several good
> points" but failed to set forth facts that would have warranted
> reversal.  In support, he cites 14 "facts that would have required
> a new trial."
>
> This claim lacks merit.  A Motion for New Trial is directed
> to the weight of the evidence, whereas a Motion for Judgment
> of Acquittal tests the sufficiency.  Regardless, the Motion for
> New Trial filed by counsel was very detailed, and in light of the
> testimony and evidence presented at trial, there is no reasonable
> probability that a Motion raising the additional points

> Defendant now cites would have been granted.  Again, the
> fact that the State's witnesses were impeached did not render
> their testimony non-existent or invalid, nor did it deprive their
> testimony of all weight or negate the element of proof of
> premeditation.

The state court record confirms that trial counsel filed a detailed motion for new trial based on the weight of the evidence.  (Respondent's Exhibit E-c at 725–26)  Whether an expanded motion for new trial would have succeeded is an issue of state law, and a state court's determination of state law receives deference in a federal court.  *Young v. Kemp*, 760 F.2d 1097, 1105 (11th Cir. 1985) ("A federal habeas court has no power to grant habeas corpus relief because it finds that the state conviction is against the 'weight' of the evidence . . . .").  Because the state court would not have granted the motion, the state court did not unreasonably apply *Strickland*.  *Meders*, 911 F.3d at 1354.

Also, the state court correctly concluded that the sufficiency of the evidence claim was not cognizable in a motion for new trial.  *Compare* Rule 3.380, Florida Rules of Criminal Procedure (authorizing a judgment of acquittal if "the evidence is insufficient to warrant a conviction") *with* Rule 3.600(b)(2) (authorizing a new trial if "the verdict is contrary to law or the weight of the evidence").  Even so, Ingram asserted that trial counsel should have raised arguments that viewed the evidence in the light most favorable to the defense.  (Respondent's Exhibit E-a at 689–91)  The trial court views the evidence in the light most favorable to the prosecution when ruling on a motion for judgment of acquittal.  *Rogers v. State*, 285 So. 3d 872, 891 (Fla. 2019).

Further, Ingram asserted that trial counsel should have argued that the State did not rebut his reasonable hypothesis of innocence. (Respondent's Exhibit E-a at 689–91) Direct evidence at trial proved Ingram's guilt. (Respondent's Exhibit C at 538) The case was not "wholly circumstantial," and the circumstantial evidence standard did not apply. *Knight v. State*, 186 So. 3d 1005, 1012 (Fla. 2016). Because the state supreme court in Florida recently abandoned the circumstantial evidence standard, Ingram could not demonstrate prejudice. *Bush v. State*, 295 So. 3d 179, 199 (Fla. 2020) ("Because this special standard is unwarranted, confusing, and out of sync with both the jury instructions currently used in this state and the approach to appellate review used by the vast majority of the courts in this country, we discontinue its use."); *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) ("Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him.").

## D.  Ground of IAC on Appeal

**Ground Eight:**

Ingram asserts that appellate counsel was ineffective for not arguing on direct appeal that the self-defense jury instruction was incorrect (1) for conveying that deadly force was justifiable "only" if Ingram reasonably believed that deadly force was necessary to prevent imminent death or great bodily harm to himself while resisting any attempt to commit aggravated assault ("sub-claim A") and (2) for reciting all of the elements for aggravated assault ("sub-claim B"). (Doc. 1 at 13–16) *Strickland* applies to a claim of ineffective assistance of appellate counsel. *Smith*

*v. Robbins*, 528 U.S. 259, 285–86 (2000).  As determined below, the state appellate

court did not unreasonably apply *Strickland*.

### Sub-claim A

Because trial counsel objected to the use of the modifier "only" in the

self-defense instruction, appellate counsel was ineffective only if the issue would have

succeeded on direct appeal.  (Respondent's Exhibit C at 491–92)  *Diaz v. Sec'y, Dep't*

*Corrs.*, 402 F.3d 1136, 1144–45 (11th Cir. 2005) ("Appellate counsel would not have

prevailed on this argument, and nonmeritorious claims that are not raised on appeal

do not constitute ineffective assistance of counsel."); *Brown v. United States*, 720 F.3d

1316, 1335 (11th Cir. 2013) ("It is also crystal clear that there can be no showing of

actual prejudice from an appellate attorney's failure to raise a meritless claim.").

The trial court instructed the jury on self-defense as follows (Respondent's

Exhibit G at 190–91) (bold added):

> The use of deadly force is justifiable **only if** the defendant
> reasonably believes that the force is necessary to prevent
> imminent death or great bodily harm to himself while resisting
> an attempt to commit aggravated assault with a firearm.
>
> . . . .
>
> A person is justified in using deadly force **if** he reasonably
> believes that such force is necessary to prevent: Imminent death
> or great bodily harm to himself **or** the imminent commission of
> aggravated assault with a firearm against himself.
>
> . . . .
>
> If the defendant was not engaged in an unlawful activity and
> was attacked in any place where he had a right to be, he had no
> duty to retreat and had the right to stand his ground and meet
> force with force, including deadly force, **if** he reasonably
> believed it was necessary to do so to prevent death or great

bodily harm to himself **or** to prevent the commission of
aggravated assault with a firearm.

These instructions tracked Florida's standard instruction for justifiable use of deadly

force.  Fla. Std. Jury Instr. (Crim.) 3.6(f) (2011).

Ingram testified that he stabbed Dilworth because he thought that Dilworth

was reaching for a gun.  (Respondent's Exhibit G at 122–27, 130–31, 145)  Trial

counsel argued the same in closing.  (Respondent's Exhibit G at 158–61, 164,

177–78)  Because the defense claimed that Ingram was justified in using deadly force

only after Dilworth attempted to commit an aggravated assault with a firearm, the

state court could have reasonably concluded that the discrepancy between the two

jury instructions was harmless.  *Vila v. State*, 74 So. 3d 1110, 1113 (Fla. 5th DCA

2011) ("It has long been held that the refusal to give a proper instruction that would

have not aided a party is harmless error.").

Moreover, the first instruction corresponded to a defense based on

Florida's justifiable homicide statute, Fla. Stat. § 782.02 (2009), and the second

corresponded to a defense based on Florida's "Stand Your Ground" statutes.  Fla.

Stat. §§ 776.012(1) and 776.013(3) (2009).  The two instructions based on the

different statutes were not irreconcilable.  *Pileggi v. State*, 232 So. 3d 415, 417 (Fla.

4th DCA 2017) ("We hold that the two statutes are not irreconcilable and, indeed,

compliment each other.  Our holding is based on the well-established principle that it

is reasonable for a person subject to a felonious attack to believe deadly force is

necessary to stop oneself from being killed or prevent serious bodily injury.").

Because the outcome on direct appeal would have remained the same even if appellate counsel had raised the issue, the state appellate court did not unreasonably apply *Strickland*. *Owen v. Fla. Dep't Corrs.*, 686 F.3d 1181, 1202 (11th Cir. 2012); *Boland v. Sec'y, Dep't Corrs.*, 278 F. App'x 876, 879–80 (11th Cir. 2008).

### Sub-claim B

Because trial counsel did not object to the recitation of the elements for aggravated assault with a deadly weapon in the self-defense instruction, appellate counsel could have been ineffective only if the instruction was fundamental error. (Respondent's Exhibit C at 469–78, 482–94, 617) *Pinkney*, 876 F.3d at 1296–97. By denying the claim in an unelaborated decision, the state appellate court implicitly concluded that the instruction was not fundamentally erroneous. *Pinkney*, 876 F.3d at 1296–97. Fundamental error is an issue of state law, and a state court's determination of state law receives deference in a federal court. *Pinkney*, 876 F.3d at 1297–99.

Even so, Florida's standard self-defense instruction required the trial court to recite the elements of aggravated assault, and the instruction supported Ingram's defense at trial. (Respondent's Exhibit G at 122–27, 130–31, 145, 158–61, 164, 177–78) Fla. Std. Jury Instr. (Crim.) 3.6(f) ("Insert and define applicable felony that defendant alleges victim attempted to commit."). Because the instruction did not improperly shift the burden of proof to the defense, the state appellate court did not unreasonably apply *Strickland*. *Woods v. State*, 95 So. 3d 925, 927–28 (Fla. 5th DCA 2012) (holding that recitation of the elements of an applicable felony for the

justifiable use of deadly force instruction without the phrase "beyond a reasonable doubt" was not fundamental error).

## V.  EVIDENTIARY HEARING

Ingram both asks the Court for an evidentiary hearing (Doc. 1 at 17) and asserts under Section 2254(d)(2) that the state court unreasonably determined facts.  (Doc. 12 at 7–8)  Ingram neither presents clear and convincing evidence to rebut a particular finding by the state court nor shows that a particular finding was unreasonable.  28 U.S.C. § 2254(d)(2), (e)(1).  Ingram also does not proffer what he would introduce at an evidentiary hearing.  Consequently, he is not entitled to a hearing.  *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) ("It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."); *Jones v. Sec'y, Fla. Dep't Corrs.*, 834 F.3d 1299, 1319 (11th Cir. 2016) ("[A] petitioner seeking an evidentiary hearing must make a proffer to the district court of any evidence that he would seek to introduce at a hearing." (citations and quotations omitted)).

## VI.  CONCLUSION

Ingram fails to meet his burden to show that the state court's decision was either an unreasonable application of controlling Supreme Court precedent or an unreasonable determination of fact.  As *Burt v. Titlow*, 571 U.S. 12, 19–20 (2013), states:

> Recognizing the duty and ability of our state-court colleagues to adjudicate claims of constitutional wrong, AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires

"a state prisoner [to] show that the state court's ruling on
the claim being presented in federal court was so lacking
in justification that there was an error . . . beyond any
possibility for fairminded disagreement." *Harrington v. Richter*,
562 U.S. [86, 103] (2011). "If this standard is difficult to meet"
— and it is — "that is because it was meant to be." *Id.*, at [102].
We will not lightly conclude that a State's criminal justice
system has experienced the "extreme malfunctio[n]" for which
federal habeas relief is the remedy. *Id.*, at [103] (internal
quotation marks omitted).

Ingram's application for the writ of habeas corpus (Doc. 1) is **DENIED**. The

clerk must enter a judgment against Ingram and **CLOSE** this case.

## DENIAL OF BOTH
## A CERTIFICATE OF APPEALABILITY
## AND LEAVE TO APPEAL *IN FORMA PAUPERIS*

Ingram is not entitled to a certificate of appealability ("COA"). A prisoner

seeking a writ of habeas corpus has no absolute entitlement to appeal a district

court's denial of his application. 28 U.S.C. § 2253(c)(1). Rather, a district court

must first issue a COA. Section 2253(c)(2) permits issuing a COA "only if the

applicant has made a substantial showing of the denial of a constitutional right." To

merit a COA, Ingram must show that reasonable jurists would find debatable both

the merits of the underlying claims and the procedural issues he seeks to raise. *See*

28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*,

279 F.3d 926, 935 (11th Cir. 2001). Because he fails to show that reasonable jurists

would debate either the merits of the grounds or the procedural issues, Ingram is

entitled to neither a COA nor leave to appeal *in forma pauperis*.

A certificate of appealability is **DENIED**.  Leave to appeal *in forma pauperis* is **DENIED**.  Ingram must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on September 30, 2020.

STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE